Harold J. Rothwax, J.
The defendant is before the court to be sentenced on his pleas of guilt to two class A misdemeanors. *644 At the time these pleas were entered and accepted the court ordered that the defendant undergo a medical examination to determine whether he is a narcotic addict. This was done pursuant to section 81.19 of article 81 of the Mental Hygiene Law. The defendant was found, by the examining physician, to be a narcotic addict.
On the first appearance of the defendant before the court, after the medical examination, the defendant admitted that he was an addict and requested that he be certified to the care and custody of the Narcotic Addiction Control Commission (N.A.C.C.) pursuant to section 81.21 of the article 81 of the Mental Hygiene Law.
The issues before the court are: (1) is the court “ satisfied ” that there is reasonable cause to believe that the defendant is a narcotic addict; and (2) if it is so satisfied, is the court obliged to certify the defendant to the Narcotic Addiction Control Commission or does it have the discretion to sentence the defendant in accordance with the provisions of the Penal Law.
The defendant’s pleas of guilt to two Class A misdemeanors were intended to cover five separate dockets and, upon the acceptance of the pleas, the three other dockets were dismissed.
It has been difficult to trace the history of this defendant’s criminal involvements because of his repeated use of different names, different dates of birth and different addresses. In this court’s view the defendant engaged in this course of conduct so that the full extent of his past criminal involvements would not appear on the occasion of his latest arrest. In this attempt at concealment he was often successful.
This young man (from his varying birth dates we may conclude that he is now between 19 and 23 years of age) has been arrested approximately 15 times, and has been convicted approximately 10 times, for crimes ranging from drug possession to jostling, bail jumping, grand larceny, assault, robbery and sexual abuse. He has acted alone and, often, with others.
In order to resolve the issues of addiction and of sentence, it is necessary to review the five cases on which this defendant appeared on the date of his pleas of guilt.
In that context, and by way of explanation, it is useful to note that section 70.30 (subd. 2, par. [b]) of the Penal Law provides a limitation upon the aggregate term of consecutive definite sentences. Under former law there was no limitation and a person could receive three or more consecutive one-year terms. The revised Penal Law limits the aggregate term to two years, with an exception not here pertinent. It is, therefore, a frequent *645 practice in the Criminal Court, where a defendant has many outstanding misdemeanor charges, to accept pleas to two of them to cover all, as it affords the court the maximum scope of punishment provided by law.
The first of the five cases arose on September 21, 1972. The defendant, using the name Anthony Matthews, was arrested and charged with possession of dangerous drugs and hypodermic instruments (Penal Law, §§ 220.05, 220.45). At arraignment, bail was fixed in the amount of $500 and the case adjourned to September 25, 1972. The defendant posted $500 cash bail and failed to appear on the adjourned date. His bail was forfeited and a warrant ordered. As a result of a new arrest for a robbery (our second case to be discussed below), the defendant, now using the name of Ronald Downs, was produced in court on November 14, 1972; his warrant was vacated, new bail was set and the case adjourned for November 17. On that date the defendant pleaded guilty to a Class A misdemeanor (Penal Law, § 220.45), and was paroled to enter Project Return, an in-resident drug treatment program, while awaiting sentence on December 8, 1972. He absconded from that program almost immediately, but the warrant did not issne until December 8. It is worth noting that between November 17 and December 8, this defendant was arrested on two other occasions (cases three and four, to be discussed below) but, because of the delay in the issuing of the warrant and because, on each of the subsequent occasions, the defendant gave a different name and a different date of birth, he was released from custody.
Finally, on January 11,1973, he was returned on the warrant, bail was set and the matter adjourned to January 16. On that date the defendant pleaded guilty to two other Class A misdemeanors (cases three and four) and, by error (nobody apparently noticing that this defendant had already pleaded guilty to the charge), this case was dismissed.
In the second case, the defendant was arrested on November 14, 1972, and charged, with two others, with robbery and sexual abuse. The defendant, on this occasion, gave a different name, address and age in order to conceal the fact that a warrant was then outstanding against him. There was no indication on the court papers that he was an addict: No CR-1 form (a statement of suspected addiction) was filed; no medical examination was ordered; the ROR investigation indicated that his health was good and there was no other evidence of any drug involvement. Upon his release in this case he again absconded. This case *646 remained a felony and was subsequently dismissed as covered by the defendant’s other pleas.
In the third matter, the defendant was arrested on November 25, 1972 and charged with jostling and attempted grand larceny (Penal Law, §§ 165.25,110.00,155.30). He again gave a different name, address, and age. He falsely indicated that he had no prior criminal record and was a student at Columbia University. He listed his health as good and did not indicate any drug involvement. The arresting officer filed a CR-1N form to the effect that narcotic addiction was not suspected.' The defendant was paroled and, once again, he immediately absconded. The defendant ultimately pleaded guilty to this charge.
In the fourth case the defendant was arrested on December 1, 1972, and charged with grand larceny and criminal possession of stolen property as a felony [Penal Law, §§ 155.30 and 165.45). It was alleged that within a period of 15 minutes the defendant had stolen two wallets frpm different complainants. Once again the defendant gave a different name. He falsely indicated that he was a student at Columbia University and that he had no prior criminal record. There was no evidence of drug involvement. The arresting officer indicated that narcotic addiction was not suspected. No medical examination was requested and none was ordered until January 16, 1973, when the defendant pleaded guilty to petit larceny and was remanded for sentence. Until that time he had been out on a low cash bail.
The fifth matter was a bail jumping charge, growing out of his failure to appear on the first charge, and this was dismissed when his other pleas of guilt were entered.
The above recital reveals, or at least suggests, the nature and extent of the defendant’s criminal behavior and the threat he poses to the community. It also makes clear the degree to which the defendant is capable of manipulation and deceit. With those factors in mind I will turn to the issues before the court.
The Mental Hygiene Law provides that when a defendant appears before the court, if he “ shall state, indicate, or show symptoms,, or it otherwise appears, that he is a narcotic addict, [he] shall undergo a medical examination to determine whether he is a narcotic addict.” (Mental Hygiene Law, § 81.19, subd. [a]). The court may not then proceed to sentence the defendant until it receives and reviews the report of that medical examination (Mental Hygiene Law, ■§ 81.21, subd. [a]).
After reviewing the report, if the court is “ satisfied ” that the jlefendant is not a. narcotic addict, the court sentences the defend *647 ant in accordance with the provisions of the Penal Law (Mental Hygiene Law, § 81.21, subd. [a]).
“ "Where the defendant admits that he is a narcotic addict and the court is satisfied as to such fact it shall make a finding to that effect and shall sentence the defendant in accordance with subdivision (d) of1 this section.” (Mental Hygiene Law, § 81.21, subd. [a], emphasis supplied). Subdivision (d) will be discussed below in connection with the second issue in this case.
The statute asks the court to determine, on the basis of the medical report and “ such other information as may be before the court”, if “ there is reasonable cause to believe that the defendant is a narcotic addict.” (Mental Hygiene Law, § 81.21, subd. [a]).
In short, the court is not bound, automatically and without inquiry to ratify either the medical report or the defendant’s admissions. While these latter are, of course, entitled to weight and consideration, they are properly subject to the scrutiny and judgment of the court. The Judge does not sit as a figurehead; his responsibility is to make an informed determination and he has power commensurate with that responsibility.
I hold, therefore, that where, as here, the Judge is not satisfied with the medical examination and the defendant’s admission of addiction, he has the authority and the obligation, on his own motion, to set the matter down for a hearing. The purpose of the hearing is to satisfy the Judge as to whether there is reasonable cause to believe that the defendant is a narcotic addict.
I think it useful to state why the court was not satisfied with the admission of the defendant and the report of the examining physician.
Defendants are not unmindful of the consequences in time of the legal choices they make. Their decisions in this area, therefore, are often tactical rather than medical or rehabilitative. This is not, or should not be, startling. Most defendants, most of the time, will opt for the shortest period of confinement. That may be wise or not; it is certainly understandable.
At the present time, the Narcotic Addiction Control Commission is holding those misdemeanants certified to it for a period varying from three to six months before releasing them for outpatient supervision. Those defendants who reasonably anticipate longer periods of incarceration if sentenced under the Penal Law have therefore repaired, frequently and consistently, to the Mental Hygiene Law. Their applications and admissions should not, for that reason alone, be discounted. The court, however, should be alert to, and aware of, the possi *648 bility of extraneous motives and the danger of manipulation and deceit in admissions by defendants of narcotic addiction.
This defendant is clearly one who has such an expectation of lengthy incarceration. For one of his age, his record is extensive and shows much recent activity. The court, therefore, distrusts his averments and looks elsewhere for objective information.
The record of the medical examination is most often inadequate for that purpose. It invariably consists of two pages. The first page is purely oonclusory: the doctor attests to his examination and presents his finding of addiction or nonaddiction. The second page is the doctor’s work sheet. It purports to explore the defendant’s drug history, physical findings, mental condition and laboratory data. There are usually no laboratory data because the defendant is not customarily examined within 72 hours of his arrest. There are, therefore, no traces of the drug still present in his system. Similarly, in this court’s experience, there are no findings as to the defendant’s mental condition. The issue of the defendant’s psychological dependence is unexplored. The doctor is not a psychiatrist and he employs no psychological tests. The physical findings do not usually (and did not here) show symptoms of withdrawal, again because the timing of the exam is too late for such signs to be manifest. Usually, the physical findings where addiction is found are limited to the observation that track marks are present. That is, of course, consistent with a finding of addiction but is not proof of it. We do not know what drug was injected and we do not know when it was injected.
We are, therefore, left with the defendant’s drug history— and the defendant is the sole source of that. It is, again, this court’experience that the doctor does not go beyond the defendant’s statements and attempt any verification. There appear to be two reasons for this: (1) most doctors expect truthful responses from their patients who are seeking their assistance and who, therefore, have no motive to lie; here, of course, the defendant may have such a motive; and (2) the examination situation is one in which a beleaguered doctor may be called upon to examine as many as 20 or more people at one time; the average exam (and the one in this case) lasts between 10 and 20 minutes; the judgment is, therefore, hurried and far too dependent on the defendant’s statements.
Sometimes the examining physician will have available the medical history and examination record of the defendant which is prepared by the detention facility. I take note that this record is not made available to the court unless the court specifi *649 cally requests it. That record, also, is heavily dependent on information supplied by the defendant. It does, however, indicate whether he is receiving methadone while in detention. (It should be noted that, though this defendant claims a habit varying from $90 to $120 per day, and of five years’ duration, this record shows that, according to him, he has never had hepatitis, a condition often associated with heavy drug use.)
In brief, the Judge at the time of his determination on the issue of the defendant’s addiction often has little information available that he can, with confidence, deem reliable. The defendant is, in large part, able to dictate the result of his application, providing that he has track marks.
The court deemed the defendant to be a serious threat to the community and it was not satisfied with the defendant’s admissions and the record of the medical examination. The court, therefore, on its own motion, decided to have a hearing on the issue.
At this hearing the Narcotic Addiction Control Commission physician, a defense psychiatrist and the defendant testified and the medical records of the defendant were introduced. The witnesses, for the most part, testified as to what the defendant had told them. It is clear that he has been close to, and is knowledgeable about, drugs and the drug milieu. This information is, however, generally available and not, by itself, conclusive as to his addiction.
The Court of Appeals has stated that ‘1 persons 6 dependent ’ upon narcotic drugs, as the language and purpose of the statute make clear, are persons who, through the repeated use of narcotic drugs, have developed so great a physical and/or emotional dependence that they are no longer able to control craving for narcotics.” (Matter of James, 22 N Y 2d 545, 551.)
The alternative status for commitment under the statute — persons who through repeated use of narcotic drugs are in imminent danger of becoming dependent upon the drug — refers to persons who have not yet reached but are in imminent danger of reaching the stage where they will be unable to control their craving for narcotic drugs. (Matter of James, supra, p. 551; Mental Hygiene Law, § 81.03, subd. 2.)
The problems which arise are those of application of the definition to a particular individual. In People v. Medina (32 A D 2d 969), the defendant was committed to N. A. C. C. when the examining physician found scarring of the skin and veins in both bicipital areas and the defendant admitted prior addiction to narcotics. The Appellate Division reversed, stating that such *650 evidence was not sufficient to establish that the defendant was art addict at the time of the examination. The doctor had not performed any tests to determine if the defendant was an addict; nor did he check out the prior medical history of the defendant; nor was there any way of determining when the scarring on the defendant’s arm was caused.
There is little more that is present here, apart from the defendant’s own averments that he is an addict. The record, all too often, is scanty, inexact and self-serving. The court is mindful that in the second, third and fourth arrests of this defendant, discussed above, there is no indication by the arresting officer or by the court of drug involvement at the time of the defendant’s arraignment. Arraignment will usually take place from 8 to 16 hours after arrest and, if the defendant was as heavily addicted as he claims, symptoms of withdrawal should by then have become apparent.
This court, in candor, must state that it is neither satisfied that this defehdant is an addict nor is it satisfied that he is not. Because the court, for reasons set forth below, will find that it has discretion to sentence this defendant in accordance with the provisions of the Penal Law, and will choose to do so, it is not necessary, for present purposes, to resolve the issue of the defendant’s narcotic addiction. Whether the defendant is, or is not, an addict, the court believes it has the authority to sentence him under the Penal Law. There is no question that if the court finds the defendant is not an addict it must sentence him in accordance with the provisions of the Penal Law (Mental Hygiene Law, § 81.21, subd. [a]). The real question is whether the court has discretion to sentence under the Penal Law if it finds the defendant to be an addict.
The statute, subdivision (d) of section 81.21 of the Mental Hygiene Law reads, in pertinent part, as follows:
“(d) A person who is found to be a narcotic addict * * * and who has pleaded guilty to or has been found guilty of a felony, misdemeanor, or the offense of prostitution shall be sentenced as follows:
“ 1. where sentence is to be imposed for a misdemeanor or for the offense of prostitution, the defendant shall be certified to the care and custody of the commission * * *
“ 2. where sentence is to be imposed for a felony, the court, in its discretion, may either impose an indeterminate sentence * * * in accordance with the provisions of the revised penal law applicable to sentencing for such felony * * * or certify *651 such defendant to the care and custody of the commission ” (emphasis supplied).
Section 60.15 of the Penal Law is to the same effect.
The statute, by its terms, appears to contemplate only sentences “ for a misdemeanor ” or “ for a felony ”. This distinction between misdemeanor and felony indicates that the determinative factor in whether the court shall have discretion is the term of imprisonment which it may impose. In any event, that is the only distinguishing definitional variance to be found in the Penal Law. A misdemeanor is simply defined as an offense for which a sentence in excess of one year cannot be imposed (Penal Law, § 10.00, subd. 4). A felony is an offense for which a sentence in excess of one year may be imposed (Penal Law, § 10, subd. 5).
The apparent intent of the Legislature, where the sentence could exceed one year, was to allow the court to review all the circumstances and to determine whether the prospect of rehabilitation should yield to the factor of protection of society and the need to impose punishment. (People v. Monsanto, 41 A D 2d 761.) Where the sentence had to be less than one year, the Legislature mandated the rehabilitative effort. No other explanation of the Legislature’s intent seems reasonable. The discretionary structure rests on the foundation of the penalty which may be imposed.
The court, therefore, concludes that where, as here, the defendant is to be sentenced for multiple misdemeanors, and the sentence may properly exceed one year, the court has discretion to sentence the defendant in accordance with the provisions of the Penal Law, even if he is found to be a narcotic addict.
In so holding, the court seeks to give effect to the object and purpose of the law and seeks to construe the statute in accord with the fair import of its terms. (Penal Law, § 5.00.)
It is, of course, the defect of mandatory sentencing provisions that they deny individualized sentencing. Recent and informed commentary holds in disfavor such mandatory provisions. The American Bar Association Project on Minimum Standards for Criminal Justice in its volume on Sentencing Alternatives and Procedures takes a strong position against mandatory sentences. (See Standard 2.1 [b] and [c] and the accompanying commentary.)
The Legislature serves its function best by providing the system with the power to deal individually with individuals; it cannot prescribe a proper sentence in advance of the event.
*652 Mandatory provisions are often self-defeating in that they require literal compliance in a context where the variety and profusion of circumstances render that undesirable or impossible. Our appellate courts have three times, in recent weeks, held such literal compliance unnecessary. (People v. Carter, 31 N Y 2d 964; People v. Crafton, 31 N Y 2d 828; People v. Monsanto, 41 A D 2d 761, supra.)
This court does not hold that a misdemeanor is a felony; it does say that two misdemeanors are more than one.
In finding that the court has discretion I have relied primarily on statutory interpretation, but other factors deserve notice and comment.
According to the New York City Criminal Justice Coordinating Council, in 1970 there were 500,000 felony crime reports, 94,000 felony arrests, 46,000 felony arraignments in Criminal Court, 18,000 arraignments in Supreme Court and under 3,000 sentences to State prison. Up to one third of the felony indictments were disposed of.by guilty plea to, or finding of, a misdemeanor.
The backlog in the processing of felonies in Supreme Court is rapidly growing worse. Increasingly, crimes that were formerly processed as felonies are reduced to misdemeanors in the Criminal Court or by the Grand Jury because they simply can no longer be reached in Supreme Court.
As a result, the Criminal Court and the Supreme Court must often sentence as misdemeanants defendants who would, but for court congestion, be felons. They often .have long records of crimes of violence. Because the Narcotic Addiction Control Commission holds those committed to it for so short a period of time, and because it appears not to screen out those who are unsuitable, it has become attractive to be an “ addict ”.
The mandatory sentencing provision has created enormous pressures. District Attorneys must reduce many felonies to misdemeanors because they cannot otherwise be processed — but if they do so a hardened felon may elect to be an “ addict ’ ’ and be returned to the community in a few months.
Article 81 of the Mental Hygiene Law often seems like an immunity statute. For example: a defendant is arrested for a felony, pleads guilty to a misdemeanor, and is sentenced to N. A. C. C. for 36 months; he is released in 4 months and is shortly thereafter rearrested for another felony, pleads to another misdemeanor, and, owing 32 months to N. A. C. C., insists that he is an addict and that he be returned to N. A. C. C.; *653 under the present mandatory provisions the court has no alternative.
I have pointed out that the mandatory provision may be a device for obtaining lenient treatment when it is not otherwise warranted.
The other defect of the mandatory provision is that it may operate harshly where other more suitable alternatives are available. For example: a young addict may be arrested for the first time for a relatively minor misdemeanor; there may be available excellent community-based drug programs, both inresident and outpatient, to which he may be accepted; the law, nevertheless, mandates that he be committed to N. A. C. C.
It follows clearly that the Legislature should not specify, in advance, sentences which must be imposed regardless of the circumstances of the offense.
This court finds that, where a defendant who is a narcotic addict may be sentenced to consecutive sentences for multiple misdemeanors, it has discretion to sentence him in accordance with the provisions of the Penal Law and, for the reasons stated above, it elects to do so.